IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-02809-SBP

C.S.,[1]

     Plaintiff,

v.

LELAND DUDEK,[2] Commissioner of Social Security,

     Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

**Susan Prose, United States Magistrate Judge**

     Plaintiff C.S. brings this action under Title II, 42 U.S.C. §§ 401 *et seq.*, of the Social Security Act (the "Act") for review of the Commissioner of Social Security's (the "Commissioner") final administrative decision denying her claim for supplemental security income ("SSI"). The court has carefully considered the administrative record, ECF No. 9 ("AR")[3], Plaintiff's brief, ECF No. 13 ("Brief"), the Commissioner's response, ECF No. 14 ("Response"),[4] and the applicable law. No hearing is necessary.

---

[1] Pursuant to D.C.COLO.LAPR 5.2(b), "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

[2] Leland Dudek is now the acting Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See* 42 U.S.C. § 405(g) (an action survives regardless of any change in the person occupying the office of the Commissioner of Social Security).

[3] The court uses "ECF No. ---" to refer to specific docket entries in CM/ECF and uses "AR: ---" to refer to documents in the administrative record.

[4] Plaintiff did not file a reply.

Because the Administrative Law Judge ("ALJ") applied the correct legal standards and substantial evidence supports her findings and the Commissioner's final decision, the court **AFFIRMS**.

## BACKGROUND

On May 3, 2021, Plaintiff applied for SSI benefits under Title XVI of the Act. AR: 88. The claim was denied initially, AR: 118, and again on reconsideration. AR: 127. Plaintiff filed a timely request for a hearing, AR: 129, and a hearing was held by video teleconference on March 30, 2023. AR: 50. The ALJ issued her decision denying Plaintiff's application for benefits on April 27, 2023. AR: 28-44. Plaintiff sought review with the Appeals Council, AR: 194-95, which was denied on September 28, 2023, AR: 11, rendering the ALJ's decision as the final decision of the Commissioner.

## SSI FRAMEWORK

A person is disabled within the meaning of the Act "only if his physical and/or mental impairments preclude him from performing both his previous work and any other 'substantial gainful work which exists in the national economy.'" *Wilson v. Astrue*, No. 10-cv-00675-REB, 2011 WL 97234, at *1 (D. Colo. Jan. 12, 2011) (quoting 42 U.S.C. § 423(d)(2)). "However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months." *Brandon v. Colvin*, 129 F. Supp. 3d 1231, 1232 (D. Colo. 2015) (citing *Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995)). "[F]inding that a claimant is able to engage in substantial gainful activity requires more than a simple

determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can *hold* whatever job he finds for a significant period of time." *Fritz v. Colvin*, No. 15-cv-00230-JLK, 2017 WL 219327, at *8 (D. Colo. Jan. 18, 2017) (emphasis in original) (quoting *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994)).

The Commissioner is required to follow a "five-step sequential evaluation process" which guides the determination of whether an adult claimant meets the definition of disabled under the Social Security Act. 20 C.F.R. § 416.920(a)(1)-(4) (SSI evaluation of disability of adults). If it can be determined that the claimant is disabled or not at a step, the Commissioner makes the determination and does not continue to the next step. § 416.920(a)(4). However, if that determination cannot be made, the Commissioner proceeds to the next step. *Id.*

Step one asks whether the claimant is presently engaged in "substantial gainful activity." § 416.920(a)(4)(i). If so, the claimant is "not disabled regardless of [ ] medical condition, . . . age, education, and work experience." § 416.920(b).

Step two assesses whether the claimant has a medically severe impairment or combination of impairments under § 416.909. § 416.920(a)(4)(ii). If the claimant does not show "any impairment or combination of impairments which significantly limits [their] physical or mental ability to do basic work activities," the claimant is "not disabled" regardless of "age, education, and work experience." § 416.920(c).

Step three tests whether the claimant's "impairment(s) meets or equals" a listed impairment and "meets the duration requirement[.]" § 416.920(a)(4)(iii). If so, the claimant is disabled regardless of "age, education, and work experience." § 416.920(d). If not, the

Commissioner analyzes the claimant's residual functional capacity, or "RFC," which "is the most [the claimant] can still do despite [their] limitations." §§ 416.902(e), 416.945(a)(1).

Step four considers whether the claimant "can still do [their] past relevant work" based on their RFC. §§ 416.920(a)(4)(iv); 416.920(e). To be disabled, the claimant's "impairment(s) must prevent [them] from doing [their] past relevant work." § 416.920(f). For guidance on this determination, "ALJs often seek the views of 'vocational experts.'" *See Biestek v. Berryhill*, 587 U.S. 97, 100 (2019) (citing §§ 404.1566(e), 416.966(e)). If the claimant's severe impairment prevents them from doing their "past relevant work" or they have no "past relevant work," the analysis continues to the final step. § 416.920(g)(1).

Lastly, step five considers the RFC assessment and the claimant's vocational factors—"age, education, and work experience." §§ 416.920(a)(4)(v), 416.920(g)(1). Any other work the claimant "can adjust to must exist in significant numbers in the national economy (either in the region where [they] live or in several regions in the country)." § 416.960(c)(1). The Commissioner is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [their] residual functional capacity and vocational factors." § 416.960(c)(1). If the claimant "can make an adjustment to other work," they are "not disabled." § 416.920(g)(1).

The claimant has the burden of proof at steps one through four. The Commissioner bears the burden at step five to prove there is other work the claimant can perform. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The burden-shifting at step five, however, does not shift the plaintiff's burden to prove his RFC. § 416.960(c)(2) ("We are not responsible for providing additional evidence about your residual functional capacity because we will use the same

residual functional capacity assessment that we used to determine if you can do your past relevant work.").

## ALJ'S DECISION

At step two, the ALJ found that Plaintiff had multiple severe physical impairments affecting Plaintiff's spine, hips, and knees, as well as mental impairments of depression, anxiety, and post-traumatic stress disorder. AR: 33. At step three, the ALJ found that Plaintiff's symptoms did not meet or medically equal any Listing. AR: 34-35. Between steps three and four, the ALJ found that Plaintiff was limited to sedentary work with postural, reaching, and handling restrictions; needed to avoid workplace hazards; and was limited to semiskilled work. AR: 35-36. The ALJ determined at step five that Plaintiff retained the ability to perform work that existed in significant numbers in the national economy and was therefore not disabled under the strict requirements of the Act. AR: 43-44.

## STANDARD OF REVIEW

In reviewing the Commissioner's decision, the court "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014). "The phrase 'substantial evidence' is a 'term of art,' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek*, 587 U.S. at 102 (quoting *T-Mobile South, LLC v. Roswell*, 574 U.S. 293, 301 (2015)). In applying the substantial-evidence standard,

> a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contacts, the threshold for such evidentiary

sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Id.* at 102-103 (cleaned up); *see also Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) ("Substantial evidence requires more than a scintilla but less than a preponderance.") (quoting *U.S. Cellular Tel., L.L.C., v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003)). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Zoltanski*, 372 F.3d at 1200 (quoting *U.S. Cellular*, 340 F.3d at 1133).

The court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Knight*, 756 F.3d at 1175 (citation omitted); *see also Zoltanski*, 372 F.3d at 1200 (the court may not displace the Commissioner's choice between two fairly conflicting views, even if the court would have made a different choice if the matter had been before it de novo). Even so, this court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007)). "A reviewing court must uphold even a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Garland v. Dai*, 593 U.S. 357, 369 (2021) (cleaned up).

In addition, this court's review is guided by the harmless error doctrine, which the Tenth Circuit Court of Appeals applies to social security disability cases. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). A court "may apply harmless error in the social security context 'where, based on material the ALJ did at least consider (just not properly), [it] could

confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.'" *Armijo v. Astrue*, 385 F. App'x 789, 792 (10th Cir. 2010) (quoting *Allen*, 357 F.3d at 1145).

## ANALYSIS

Plaintiff generally challenges the ALJ's decision on two grounds. First, she claims that the ALJ failed to properly consider the opinions of several medical providers—Nurses Sarah Schroepfer and Brieana Belisle, and Dr. Richard Madsen. Brief at 12-20. Second, she asserts that the ALJ's finding that Plaintiff does not need a walker or assistive device is not supported by substantial evidence. *Id.* at 20-22. The court takes each in turn.

## I. Medical Opinions

### A. Standards

For claims filed on or after March 27, 2017—as is the case here because Plaintiff filed her application in 2021—the ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinions or prior administrative medical findings, including those from a claimant's own medical sources. 20 C.F.R. § 416.920c.

An ALJ must "give consideration to all the medical opinions in the record," *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012), and articulate how persuasive she finds each medical source's opinion. § 416.920c. The persuasiveness of a medical source's opinion is evaluated using five factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant, which includes the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether the treatment relationship is an examining relationship; (4) the medical

source's area of specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding. § 416.920c(c). The regulations instruct that supportability and consistency "are the most important factors," and must be addressed. § 416.920c(b)(2) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.") The ALJ "may, but [is] not required to," address the other factors. *Id.*

The supportability factor considers whether the medical source's opinion is supported by "objective medical evidence" and "supporting explanations": "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinions, the more persuasive the medical opinion will be." § 416.920c(c)(1) (cleaned up). The consistency factor compares the medical source's opinion and "the evidence from other medical sources and nonmedical sources" in the record. § 416.920c(c)(2). "The more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion will be." *Id.* (cleaned up).

Social Security regulations do not "prescribe the depth at which the ALJ must discuss" supportability and consistency. *Harp v. Kijakazi*, No. CV 1:21-0275 KRS, 2022 WL 2341740, at *6 (D.N.M. June 29, 2022). At a minimum, though, the ALJ must "provide an explanation that allows the reviewing court to follow [her] reasoning and communicates how [s]he considered the factors of consistency and supportability for each medical source's opinions." *Zambrano v. Kijakazi*, No. CV 1:20-1356 KRS, 2022 WL 1746765, at *5 (D.N.M. May 31, 2022). And so long as the court can "trace the path of the adjudicator's reasoning," the ALJ has met the

articulation requirements. *Nielsen v. Comm'r, SSA*, No. 21-4136, 2022 WL 15570650, at *5 (10th Cir. Oct. 28, 2022)[5] (quoting *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5858 (Jan. 18, 2017)).

**B.    Nurse Schroepfer**

Nurse Sarah Schroepfer provided a letter opining that, due to back and knee issues, Plaintiff could stand no more than 30 minutes, sit no more than 30 minutes, and had significant impairment with activities requiring mobility and range of motion with thoracic and lumbar movement. AR: 283. The ALJ was not persuaded by these opinions:

> Neither is supported by the treatment record, including notes from her visits with the claimant. For example, Nurse Schroepfer's treatment records reveal the claimant had orthopedic left knee surgery and recovered well (B23F/24). The claimant was able to ambulate with a brace. An exam noted her left knee range of motion was significantly impaired but her lumbar and bilateral hip range of motion was moderately impaired (B23F/29). She had no motor deficits, no sensory deficits and positive numbness and tingling in bilateral lower extremities. However, objective examinations later note her left knee range of motion was significantly impairment [sic], nonetheless, the claimant's gait was within normal limits, and she had no numbness, tingling, or loss of sensation (B23F/45). Furthermore, the opinion is not consistent with an examination on October 17, 2022, showed limited lumbar rotation, extension and flexion and tenderness (bilateral paraspinous L1-5).

---

[5] While an unpublished opinion, this court sees no reason to disagree with the analysis in this case and finds it persuasive. *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005) ("In this circuit, unpublished orders are not binding precedent and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.") (cleaned up); *see also* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").

> However, her gait was normal, and her stance was normal. In addition, her sensation was grossly intact (B19F/15).

AR: 42.

Plaintiff argues that the ALJ selectively relied on some medical records and not others and that what the ALJ relied on does not rise to the level of substantial evidence. But the court need only find that the ALJ applied the correct legal standards—which Plaintiff does not contest—and that substantial evidence supports the ALJ's findings. *See Knight ex rel. P.K.*, 756 F.3d at 1175. Irrespective of whether there may be evidence contradicting the ALJ's conclusion, the court cannot say that the ALJ's decision here is unsupported by substantial evidence. *See Zoltanski*, 372 F.3d at 1200 ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.") (quoting *U.S. Cellular*, 340 F.3d at 1133 (internal quotation marks omitted)).

First, the ALJ found that Nurse Schroepfer's opinions were not supported by the Nurse's examination notes and findings showing that Plaintiff recovered well from a recent surgery and did not suffer from significant functional limitations. AR: 42. As to consistency, the ALJ cited exam notes from Nurse Belisle, which reflect findings that Plaintiff exhibited normal gait and stance and that her sensation was grossly intact. AR: 42. This evidence supports the ALJ's supportability and consistency analysis and is more than "a mere scintilla"; thus, the court finds substantial evidence supporting the ALJ's treatment of Nurse Schroepfer's opinions. *See Gonzales v. Colvin*, 515 F. App'x 716, 719 (10th Cir. 2013) (concluding that "normal gait and normal neurological exam results" were substantial evidence supporting the ALJ's treatment of

treating physician's opinions); *see also Biestek*, 587 U.S. at 103 ("[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.").

And having reviewed the Administrative Record, the court finds that the ALJ did not engage in "impermissible cherry-picking," *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018), of the medical records. *See K.K. v. Kijakazi*, No. 20-cv-02040-DDD, 2022 WL 819540, at *7 (D. Colo. Mar. 18, 2022) (noting that this type of argument "'is seldom successful because crediting it would require a court to re-weigh record evidence.'") (quoting *DeLong v. Comm'r*, 748 F.3d 723, 726 (6th Cir. 2014)).

Accordingly, the court overrules Plaintiff's first claim of error.

### C.    Nurse Belisle

Nurse Belisle opined that Plaintiff could sit, stand, or walk for less than two hours per day, would miss two days of work per month, and would need to lie down periodically due to fatigue. AR: 42. Again, the ALJ was not persuaded by these opinions:

> Nurse Belisle noted that she reviewed historical records, without identifying what she reviewed. Neither her record, nor any other would support such extreme limits. She does not reference any specific clinical correlation for her opinion. For example, Nurse Belisle's treatment notes are unremarkable and only document medication management and subjective complaints (B19F). Furthermore, her opinion is not consistent with subsequent treatment records that show her gait was normal, and her stance was normal. In addition, her sensation was grossly intact (B19F/15).

AR: 42 (cleaned up). Plaintiff's challenges here are similar to those she raised in connection with the opinions of Nurse Schroepfer. Again, the court cannot sustain Plaintiff's challenges.

First, the ALJ adequately articulated why Nurse Belisle's opinions were not supported, noting that she did not identify the records she reviewed or point to examination findings

supporting her opinions. AR: 42. Indeed, Nurse Belisle based her opinions on an unspecified "physical assessment" and her "review of historical records" which, as the ALJ highlights, are not identified. AR: 760. When it comes to the supportability of a medical provider's opinions, it is permissible for an ALJ to discount opinions founded upon blanket, unparticularized statements. *See S.P. v. Kijakazi*, No. 22-1077-SAC, 2022 WL 4465080, at *3 (D. Kan. Sept. 26, 2022) (noting that whether a provider explained "how or why she reached her opinion" went to the supportability of the provider's opinion) (citing *Starman v. Kijakazi*, No. 2:20-cv-00035-SRC, 2021 WL 4459729, at *4 (E.D. Mo. Sept. 29, 2021) (collecting cases)). The court discerns no error in the ALJ's reasoning.

Second, the records cited by the ALJ are enough to find substantial evidence supporting her decision. The ALJ again relied on findings of normal gait and neurological function, which, as discussed above, is enough to affirm the ALJ's conclusion. *See Ramirez v. Comm'r of Soc. Sec.*, No. 1:18-cv-01322-SAB, 2019 WL 4201437, at *8 (E.D. Cal. Sept. 5, 2019) ("[T]he Court finds the ALJ's reliance on findings of normal gait in the record is a specific and legitimate reason based on substantial evidence for assigning reduced weight to the opined limitations.") (citing *Shephard v. Berryhill*, 722 F. App'x 641, 643 (9th Cir. 2018) (holding ALJ "gave 'specific and legitimate reasons' for discounting Dr. Merrill's opinion that Shephard could not stand two hours a day or perform sedentary work," including citing to "emergency room records documenting such things as normal ranges of motion and steady gait")).

Consequently, the court overrules Plaintiff's second assignment of error.

### D.    Dr. Madsen

Dr. Madsen offered an opinion that Plaintiff would have moderate difficulty in

maintaining acceptable attendance and performing work activities on a consistent basis, and that she would require specialized supervision from individuals trained to supervise employees with chronic mental health issues. AR: 686. He further opined that Plaintiff would have marked impairment in completing a typical workday and/or workweek without interruption. AR: 686. He specifically noted that Plaintiff's chronic pain affected her mood and negatively impacted her ability to focus and concentrate. AR: 686. The ALJ found these opinions to be partially persuasive:

> Dr. Madsen's objective examination supports some moderate limitations as his examination revealed some impairment with memory and anxious and depressed mood (B10F/2). However, the examination does not support any marked limitations, nor does it support required specialized supervision. For example, while the claimant appeared anxious and depressed her thought processes were non-psychotic and her thought content was logical and relevant (B10F/2). Furthermore, the opinion is inconsistent with the claimant's report that she does self-care and takes her youngest son to doctors' appointments. She also goes to her own doctors' appointments. She drives and she tries to help with general household chores, but frequently must rest. She does laundry, she watches television, and the record shows she can travel to Texas (See B19F).

AR: 41-42.

Plaintiff insists that the ALJ's supportability and consistency assessment of Dr. Madsen's opinions is not supported by substantial evidence. Regarding supportability, the ALJ found that Dr. Madsen's opinions were not fully supported by his own examination findings, which showed that Plaintiff did not have severe abnormal thought processes and that she was able to think logically and on task. While Plaintiff maintains that these findings do not necessarily contradict Dr. Madsen's prescribed limitations, whether or not Plaintiff is correct is ultimately immaterial because this was not the only reasoning articulated by the ALJ.

The ALJ also assessed the supportability and consistency of Dr. Madsen's opinions based on findings in the medical records, which showed that Plaintiff could independently perform many daily activities, such as laundry and driving, activities that Dr. Madsen himself observed Plaintiff could accomplish. AR: 42, 684-85. Furthermore, in the paragraph preceding the analysis of Dr. Madsen's opinions, the ALJ cited evidence showing that Plaintiff did not receive intensive treatment for her mental conditions and had numerous normal mental status examination findings. AR: 41 (citations omitted). Taken together, this evidence supplies the minimal support necessary to uphold the ALJ's conclusion. *Garland*, 593 U.S. 357, 369 (2021) ("A reviewing court must uphold even a decision of less than ideal clarity if the agency's path may reasonably be discerned.") (cleaned up).

As a result, the court overrules Plaintiff's third assignment of error.

## II. Plaintiff's Need for an Assistive Device

Lastly, Plaintiff argues that the ALJ should have found that she required a walker or other assistive device and included that limitation in the RFC calculation. Brief at 21. During her step three analysis, the ALJ found no objective evidence indicating Plaintiff's need for an assistive device. AR: 34. The ALJ reasoned that Plaintiff had demonstrated a normal, steady gait and that she retained the ability to use her arms to "independently initiate, sustain, and complete work-related activities involving fine and gross movements." AR: 34. Plaintiff argues that the ALJ lacked substantial evidence for this conclusion and that there is objective evidence demonstrating her need for an assistive device.

"To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or

standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." *Staples v. Astrue*, 329 F. App'x 189, 191 (10th Cir. 2009) (citing SSR 96-9p, 1996 WL 374185, at *7). A plaintiff need not show that she was prescribed an assistive device but must provide medical documentation establishing the need for one. *Id.* at 191-92.

Plaintiff maintains that there is such evidence. She claims a provider "ordered a walker for her in November 2021." Brief at 21. But as the Commissioner highlights in his Response, this "order" came after a recent surgery and in response to Plaintiff specifically requesting a walker. AR: 1181. Given these circumstances, the Commissioner asserts that the ALJ is still correct that there is no objective evidence to support Plaintiff's need for a walker. The court agrees. Plaintiff has not identified any instance where a medical provider explicitly indicated that she needed a walker or assistive device. Again, while a prescription is not required, there must be unequivocal evidence articulating the need for an assistive device. *See, e.g.*, *Tripp v. Astrue*, 489 F. App'x 951, 955 (7th Cir. 2012) (collecting cases and finding that a doctor's statement that the plaintiff "does need a crutch" did not constitute medical documentation of need for assistive device because it "lack[ed] the specificity necessary to determine whether this was the doctor's *medical* opinion or merely a restatement of what was told to him by [plaintiff]") (emphasis in original); *accord Staples*, 329 F. App'x at 191-92 (doctor's statement that claimant "uses a cane to walk" did not establish medical necessity).

It is for this same reason that Plaintiff's citations to evidence that, in her view, highlights the severity of her conditions also fall short. As the court in *Staples* explained, "SSR 96-9p requires more than generalized evidence of a condition that might require use of a cane. It

requires medical documentation *establishing the need* for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." 329 F. App'x at 192 (cleaned up, emphasis in original); *see also Bryan v. Colvin*, No. 15-cv-00031-CBS, 2016 WL 8715612, at *6 (D. Colo. Mar. 4, 2016) ("The Social Security regulations require more than generalized evidence of a condition that might require use of a cane.") (citing *Staples*, 329 F. App'x at 192). Thus, Plaintiff cannot prevail simply by pointing to medical records suggesting that she has a condition that could be alleviated by using a walker.

Accordingly, the court finds that there is substantial evidence in the record to support the ALJ's conclusion that Plaintiff did not require a walker or other assistive device and, therefore, overrules Plaintiff's final assignment of error.

## CONCLUSION

For the foregoing reasons, the court respectfully finds that the Commissioner's final decision is supported by substantial evidence in the administrative record and applies the correct legal standards. Accordingly, the court finds no grounds warranting reversal or remand and therefore **AFFIRMS** the ALJ's determination that Plaintiff is not disabled. The Clerk of Court shall enter judgment in the Commissioner's favor and close this civil action.

DATED: March 21, 2025                    BY THE COURT:

_____
Susan Prose
United States Magistrate Judge

16